IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| KATHY MARIE JONES | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:12cv602 |
| | § | |
| COMMISSIONER, SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

On September 6, 2012, the Commissioner removed the above-styled lawsuit from the 4th Judicial District Court, Rusk County, Texas. Plaintiff, proceeding *pro se*, initiated this lawsuit seeking judicial review of the Commissioner's decision denying her application for Social Security benefits. The parties filed consent to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636. For the reasons discussed below, the Commissioner's decision is **AFFIRMED** and the complaint is **DISMISSED** with prejudice.

### PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on July 13, 2009, alleging a disability onset date of January 31, 2008. She then filed an application for supplemental security income ("SSI") on July 27, 2009. The agency denied the applications on November 18, 2009, and again upon reconsideration on February 8, 2010. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). An ALJ conducted a hearing on September 14, 2011 and issued an unfavorable decision on November 23, 2011, concluding that Plaintiff is not disabled as defined in the Social Security Act (the "Act"). Plaintiff submitted a request for review of the ALJ's decision on January 18, 2012, and again on June 12, 2012. The

Appeals Council denied the request for review on June 29, 2012. As a result, the ALJ's decision became that of the Commissioner. Plaintiff filed this lawsuit on August 14, 2012, seeking judicial review of the Commissioner's decision. The Commissioner then removed the case to this Court on September 6, 2012.

**STANDARD**

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n.2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); see *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.

1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." See *Villa*,

895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in his November 23, 2011 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since January 31, 2008, the alleged onset date (20 CFR 404.1571, *et seq*., and 416.971, *et seq*.).

3. The claimant has the following severe impairments: disorders of the back and history of carpal tunnel syndrome and hypothyroidism [20 CFR 404.1520(c) and 416.920(c)].

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. I find that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 2 hours in an 8–hour workday and sit for 6 hours in an 8–hour workday. The claimant is not limited in pushing or pulling (including the operation of foot and/or hand controls) with the upper and lower extremities. She has no postural, visual, communicative, manipulative, or environment limitations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 19, 1963 and was 44 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date, and 48 years of age at the time of the hearing (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416. 964).

9. Considering the claimant's age, education, work experience, and residual functional capacity I found, there are jobs that exist in significant numbers in the national economy that the claimant can perform [20 CFR 404.1569 and 404.1569(a)].

10. The claimant has not been under a disability, as defined in the Social Security Act, before or after January 31, 2008, through the date of this decision [20 CFR 404.1520(g)].

## ADMINISTRATIVE RECORD

Plaintiff was born on July 19, 1963 and alleges a disability onset date of January 31, 2008. Plaintiff was forty-four years old at the time of her alleged onset of disability. Plaintiff has a high school education. Her past relevant work includes employment as a pantry food maker and as a deli counter worker.

The medical records include an emergency room visit prior to Plaintiff's alleged onset of disability. Plaintiff presented to the emergency room at the Henderson Memorial Hospital on January 6, 2006 complaining of pain with urination. Plaintiff reported her medical history as including hypothyroidism and a back injury. The physician diagnosed Plaintiff with a urinary tract infection and prescribed medication.

Plaintiff received a physical examination on March 12, 2008 at the Henderson Memorial Hospital Family Health Clinic when she complained that she was out of her thyroid medication. Plaintiff reported having hypothyroidism since July 2005. She also reported chronic fatigue, back pain and difficulty walking as a result of tiring easily. Dr. Lawrence's record states that Plaintiff's physical exam was normal and she was prescribed Synthroid. A follow-up letter from the clinic states that Plaintiff's lab results were normal, although the attached specimen report shows slightly low levels for Plaintiff's BUN, B/C ratio, sodium, potassium, osmolality, T3U and T4.

Dr. Michael McShan conducted a consultative examination on October 28, 2009. During her examination, Plaintiff reported that she could not squat and rise due to low back pain and stiffness or weakness, but she was able to bend and touch her fingertips to the floor. Plaintiff showed no difficulty standing and no objective signs of tenderness or spasms. Plaintiff indicated to Dr. McShan that she experienced tenderness in the midline of the lumbar spine and she exhibited an abnormal curvature of the upper lumbar spine. Examination of Plaintiff's wrists, hands and fingers revealed normal grip strength and normal extension and flexion of all fingers. Plaintiff reported numbness and tingling in her fingertips but there was no objective indication of reduced grip. In addition, Plaintiff did not exhibit any objective signs of osteoarthritis or rheumatoid arthritis. Plaintiff displayed full range of motion in her knees and hips and stable joints in her knees, hips and ankles. All other aspects of the physical examination were normal. X-rays of Plaintiff's right wrist and lumbar spine were unremarkable.

It appears that Plaintiff received her primary care at Rusk County Community Health. The progress notes included in the administrative record show that Plaintiff saw two different nurse practitioners at the clinic and had lab work done regularly in 2010 and 2011 to follow her TSH level. As a result of Plaintiff's complaints of joint pain and lab results, she was referred to a rheumatologist.

Dr. Kayvan Kamali, a rheumatologist, examined Plaintiff on October 11, 2010 for evaluation of positive rheumatoid factor, ANA and ASO titer. On examination, Plaintiff expressed tenderness of the PIP joints in her fingers, especially the fourth finger on the left, and grimaced with flexion of her wrists. She showed good range of motion in her elbows, shoulders, knees and hips, but grimaced with external rotation of her shoulders. Dr. Kamali diagnosed polyarthalgias/positive rheumatoid factor/positive ANA/elevated CRP/positive ASO titer. He

prescribed Penicillin, Mobic and Prednisone. Dr. Kamali also noted Plaintiff's history of hypothyroidism and iron deficiency anemia. Plaintiff returned to Dr. Kamali on October 28, 2010. Dr. Kamali noted that Plaintiff's SED rate and CRP normalized and tapered her dosage of Prednisone. Review of X-rays from Plaintiff's previous visit revealed probable changes of osteoarthritis on the right hand and probable osteoarthritis on the left.

At a follow up visit on December 6, 2010, Plaintiff complained of an increase in pain after tapering off of Prednisone. Plaintiff reported pain in her PIP joints, MCP joints, wrists, shoulders, neck, knees, ankles and MTP joints. Examination of Plaintiff's joints revealed good range of motion and no synovitis, swelling or warmth. Dr. Kamali diagnosed undifferentiated connective tissue disease and prescribed Plaquenil. Plaintiff returned on February 7, 2011. Plaintiff reported that she stopped taking Plaquenil after a month. Dr. Kamali started Plaintiff back on Plaquenil and Prednisone and additionally prescribed Atelvia for osteoporosis.

Dr. Kamali examined Plaintiff in a follow up appointment on July 15, 2011. Dr. Kamali noted that Plaintiff missed a follow up appointment in April 2011. Dr. Kamali noted that Plaintiff grimaced with flexion of the wrists and left knee. She exhibited good range of motion in all other joints. Plaintiff's joints were cool to the touch and did reveal swelling. Dr. Kamali again diagnosed undifferentiated connective tissue disease and prescribed Plaquenil. Dr. Kamali prescribed Fosamax for osteoporosis because Plaintiff reported that Atelvia was too expensive.

Plaintiff testified at her hearing before the ALJ. Plaintiff stated that she received some unemployment benefits in 2009 and did job searches during that time period. Plaintiff's previous employment included work in the deli at Wal-Mart for ten years. She testified that she worked there from 1996 until she was fired in 2006. In 2004, Plaintiff fell at work and hurt her back. She received worker's compensation following her injury and received a five percent disability

rating from the worker's compensation agency. Sometime after her Wal-Mart employment, Plaintiff worked for Rusk County in the Veterans Office for a few months performing clerical work during the vacations of the permanent employees.

When asked about her medical history, Plaintiff testified that she has not been hospitalized, undergone any surgical procedures or received any rehabilitation or physical therapy treatment from the date of her alleged onset of disability to the date of her hearing. She suffers from rheumatoid arthritis and osteoporosis. Plaintiff stated that her physician, Dr. Kamali, told her she also has a little Lupus. She experiences pain in her knee, feet, elbows and right hand. Plaintiff testified that she has difficulty gripping items and opening drinks. Plaintiff takes pain medication, but stated that it does not help. Plaintiff rated her pain level, on a scale of one to ten, as a nine and complained that she experiences pain and fatigue all of the time. Plaintiff explained that she stopped working in 2008 because she could not stand for long periods of time. She also asserted that she could not work five days a week, eight hours per day, because she cannot sit or stand too long before needing to get up and stretch and because of her pain.

Plaintiff explained that she lives alone in a house with her young son. Sometimes she cooks simple meals like spaghetti and sometimes her son prepares frozen meals. Plaintiff does the dishes, laundry and sweeping. She testified that her son vacuums and takes out the trash. She makes the beds with her son's help. Plaintiff stated that she used to pick up her son from school, but now he rides the bus to and from school because of a problem with her car. Plaintiff spends most of her day watching TV. For recreation, Plaintiff and her son go to the theater to see a movie every now and then or walk to the park.

Next, the ALJ heard testimony from a vocational expert, Ms. Skinner. Ms. Skinner testified that Plaintiff's past work at Wal-Mart is classified as pantry food maker, which is light,

semi-skilled work. Her work at the deli counter is classified as light, unskilled work. There are no transferable skills. The ALJ provided Ms. Skinner the hypothetical of someone who can perform light work, sitting, standing and/or walking for about six hours in an eight-hour work day, with no push/pull limitations and no other exertional limitations. Ms. Skinner testified that such an individual could perform Plaintiff's past relevant work as a deli cutter/slicer and pantry food maker as it is described in the DOT. If the limitations are changed such that the individual can only stand and/or walk up to two hours in an eight-hour work day and sit up to six hours, then the individual could not perform Plaintiff's past relevant work. She stated, however, that there are jobs in significant numbers in the national economy that such a person could do. For example, jobs such as order clerk, food and beverage, charge account clerk, and telephone quotation clerk are sedentary and unskilled. There are 1,325 order clerk jobs in Texas and 18,500 nationally. There are 2,975 charge account clerk jobs in Texas and 32,400 nationally. There are 6,500 telephone quotation clerk jobs in Texas and 83,400 nationally. Ms. Skinner stated that missing work two days per month due to fatigue, pain or medical conditions would eliminate those jobs.

## DISCUSSION AND ANALYSIS

In the Order Directing Filing Briefs, filed on September 13, 2012, the Court ordered Plaintiff to submit a brief stating the exact issues presented for review in separate numbered paragraphs. The brief submitted by Plaintiff in this case fails to identify any issues for review. In addition, Plaintiff's brief fails to provide a statement of the case and an argument, as ordered by the Court. Instead, Plaintiff attached copies of medical records.

The bulk of the medical records submitted by Plaintiff are already included in the administrative record. There are four pages of medical records that are not in the record. *See*

Plaintiff's Brief, pp. 22–25.  These records appear to concern an admission to the East Texas Medical Center Regional Healthcare System, Tyler, Texas, on June 6, 2012.  To be material, new evidence must relate to the time period for which benefits were denied and it cannot concern a later–acquired disability or a subsequent deterioration of the previously non–disabling condition.  *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).  Plaintiff does not show that the June 2012 medical records are material and they are not considered.

In his findings, the ALJ concluded that Plaintiff meets the insured status requirements through June 30, 2012, she has not engaged in substantial gainful activity since January 31, 2008, the alleged disability onset date, and Plaintiff has the severe impairments of disorders of the back, a history of carpal tunnel syndrome and hypothyroidism.  After determining that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, the ALJ turned to Plaintiff's residual functional capacity.  The ALJ concluded that Plaintiff retained the residual functional capacity to perform sedentary work.  She cannot perform her past relevant work.

Once the ALJ determined that Plaintiff could not perform her past relevant work, the burden shifted to the Commissioner to prove that Plaintiff's residual functional capacity, age, education and work experience allowed her to perform work in the national economy.  *Villa*, 895 F.2d at 1022 (citing *Anderson*, 887 F.2d at 632–33).  The ALJ considered the medical records from Plaintiff's treating physician, Dr. Kamali, hospital and clinical records, the record of Plaintiff's consultative examination with Dr. McShan and the opinion of a non–examining state agency expert consultant.  The ALJ also considered Plaintiff's testimony and complaints concerning her pain, as well as her activities of daily living.  As a result of Plaintiff's testimony,

the ALJ afforded little weight to the non–examining expert's opinion that Plaintiff lacks any severe impairments or limitations.

In addition to reviewing all of the pertinent records and hearing testimony from Plaintiff, the ALJ observed Plaintiff at her hearing, including her demeanor, behavior, responses, facial expressions, reactions and mobility. The ALJ weighed all of the objective and subjective evidence and concluded that the record does not support the severity of the limitations alleged by Plaintiff. In determining whether pain is disabling, the courts give deference to the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1384–85 (5th Cir. 1988). The Commissioner, as opposed to the Court, is the fact finder and the Commissioner may determine the credibility of witnesses and medical evidence. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

It is well settled that pain in and of itself may be disabling. *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Not all pain, however, is disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). To rise to the level of disabling, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1991). The ALJ must consider subjective evidence of pain, but it must be corroborated by objective medical evidence and it is within the ALJ's discretion to determine the pain's disabling nature. *Wren v. Sullivan*, 925 F.2d 123, 128–29 (5th Cir. 1991); *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). A claimant's testimony of pain, standing alone, is insufficient to establish disability. *See* 42 U.S.C. § 432(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive of disability."). "At a minimum, objective medical evidence must

demonstrate the existence of a condition that could reasonably be expected to produce the level of pain or other symptoms alleged." *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992) (citing *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1985)).

The medical records in this case do not show pain that is unresponsive to therapeutic treatment. The ALJ considered the intensity, duration and limiting effects of Plaintiff's symptoms and determined that the objective medical evidence for the relevant time period does not support the degree of limitations alleged by Plaintiff. The objective medical evidence from both Plaintiff's treating physician and the consultative examiner fails to show overt signs of disabling pain, such as several muscle weakness, atrophy, deformity, swelling, tenderness, spasm, joint stiffness, limited range of motion and sensory–motor deficits. Despite Plaintiff's complaints of pain and stiffness in her joints, her physical examinations revealed no limitations on her range of motion, no swelling, no warmth, no synovitis and normal grip strength. The objective evidence does not corroborate Plaintiff's subjective assertion of pain at the level of a nine on a scale of one to ten. The ALJ's determination that the objective medical evidence does not show an impairment capable of producing Plaintiff's alleged symptoms is supported by substantial evidence.

The record in this case shows that the ALJ weighed the medical opinions in accordance with 20 C.F.R. § 404.1527 and adequately articulated the weight given to each medical expert's opinion. *See Hammond v. Barnhart*, 124 Fed.Appx. 847, 851 (5th Cir. 2005). Having considered and assessed the probative value of each medical opinion, as well as Plaintiff's assertions of pain and daily activities, the ALJ concluded that Plaintiff retained the residual functional capacity for sedentary work. The ALJ specifically noted that the objective medical evidence fails to show a more severe limitation on Plaintiff's residual functional capacity. In this case, there is substantial

evidence in the record supporting the ALJ's decision that Plaintiff retained the RFC to perform unskilled sedentary work activity.

The objective medical evidence also supports the ALJ's finding that Plaintiff cannot perform her past relevant work. The vocational expert provided uncontroverted testimony that there are a significant number of jobs in the national and state economy that Plaintiff could perform with her limitations, age and education. The vocational expert identified three different sedentary, unskilled jobs existing in significant numbers.

The ALJ applied the correct legal standards and there is substantial evidence in the record supporting the Commissioner's decision. When the Commissioner's findings are supported by substantial evidence, they must be affirmed. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The complaint is without merit. It is therefore

**ORDERED** that the Commissioner's final decision is **AFFIRMED** and the complaint is **DISMISSED** with prejudice.

So ORDERED and SIGNED this 22nd day of August, 2014.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE